Lynn D. FRENCH, suing through his parent James H. French; David C. Humbles, III; Keith W. Medley, suing through his parent Alfred Medley, Sr.; Vallery Ferdinand; Lawrence J. Terrel; Edward Merricks; Spencer Williams; Gray Brown; Larry Jones; and Blake L. Porter

v.

Emmett W. BASHFUL, in his capacity as Dean of Southern University in New Orleans; G. Leon Netterville, in his capacity as President of the Southern University System; and Southern University in New Orleans.

Civ. A. No. 69–1877.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 18, 1969.

Robert Glass of New Orleans Legal Assistance Corp., New Orleans, La., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Second Asst. Atty. Gen., Harry H. Howard, Asst. Atty. Gen., State of Louisiana, New Orleans, La., for defendants.

COMISKEY, District Judge.

The ten plaintiffs in this suit were students at Southern University in New Orleans (hereafter referred to as SUNO) during the Spring, 1969 semester. As a result of their alleged participation in campus disturbances some of the plaintiffs were expelled from SUNO, while others were suspended. The defendants to this suit are Emmett W. Bashful, the Dean of SUNO, G. Leon Netterville, the President of the Southern University System, and SUNO.

Plaintiffs bring this action under the Civil Rights Act, 42 U.S.C. § 1983, asking that this Court grant an injunction requiring, inter alia, that defendants reinstate plaintiffs as students in good standing at SUNO. Plaintiffs also ask that this Court issue a declaratory judgment under 28 U.S.C. § 2201 and § 2202 decreeing that the suspensions and expulsions of the plaintiffs are unconstitutional. In connection with the request for injunctive relief, defendants admit that the plaintiffs are suffering an irreparable injury, if they were illegally prohibited from attending SUNO.

Plaintiffs' first cause of action is based on the allegation that they were denied procedural due process at the hearings held before the University Discipline Committee which ultimately resulted in the expulsions and suspensions complained of in this suit. There were two sets of hearings held to consider plaintiffs' alleged misconduct. The first set of hearings was held on May 9, 1969, to consider charges which stemmed from the alleged takeover of the administrative offices of the university by some of the plaintiffs and others on May 5, 1969. These hearings were concerned with the plaintiffs Lynn D. French, David C. Humbles III, Keith W. Medley, Vallery Ferdinand, Blake Porter and Spencer Williams. These plaintiffs were notified by letters dated May 8, 1969, of the May 9 hearings before the Discipline Committee. These six plaintiffs retained attorneys to represent them at these hearings, and all asked the Discipline Committee to permit them to be represented by these attorneys at the hearings. Two attorneys retained by plaintiffs also asked the Discipline Committee to permit them to represent plaintiffs at the hearings and for more time to prepare their case. But these requests were refused, and the plaintiffs had to defend themselves before the Discipline Committee without the assistance of their retained legal counsel.

After the hearings the Discipline Committee voted to place plaintiffs French, Humbles, Medley and Ferdinand on strict probation for a period of at least six months and not more than one year. They were warned by letter dated May 10, 1969, that "Should you violate any University regulations during this period, you will automatically be expelled from Southern University in New Orleans." Plaintiffs Porter and Williams were cleared of the charges brought against them and were not assessed with any penalties.

More campus disturbances soon followed, and plaintiffs Humble, Medley and Ferdinand were expelled by letter dated May 16, 1969, for violating their probations when they occupied the Dean's office. In a letter dated May 19, 1969, plaintiff French was expelled for violating his probation by participating in a sit-in on the first floor of the Administration Building and inducing others to commit acts of violence and destruction.

Disciplinary action was also taken against the other plaintiffs in this case as a result of the campus disturbances following the May 9 hearings. Plaintiffs Lawrence J. Terrel and Spencer Williams were summarily placed on strict probation by letters dated May 16, 1969. Subsequently, by letters dated May 19, 1969, Terrel was suspended indefinitely and Williams was expelled. Plaintiff Blake L. Porter was placed on strict probation by letter dated May 16, 1969, and he was expelled by letter dated May 23, 1969. Plaintiff Edward Merricks was suspended indefinitely by letter dated May 27, 1969; he had not previously been placed on probation. Plaintiff Gary Brown was also suspended indefinitely by letter dated May 19, 1969 without having previously been placed on probation. Plaintiff Larry Jones was expelled by letter dated May 23, 1969, although he, too, had not previously been placed on probation.

All of these six plaintiffs—Terrel, Williams, Porter, Merricks, Brown and Jones—were given an opportunity to defend themselves against charges stemming out of these campus disturbances at hearings held on June 2, 1969, for the purpose of reviewing the actions already taken against these students. All of these plaintiffs were notified of the June 2 hearings by letters dated May 26, 1969, with the exception of plaintiff Merricks, who was notified in a letter dated May 27, 1969. At the June 2 hearings the Discipline Committee again refused to permit the participation in such hearings by retained legal counsel. Following these hearings Dean Bashful confirmed the penalties imposed on all of these defendants prior to such hearings.

█ It is well established in this circuit that constitutional due process requires notice and some opportunity for hearing before students at a tax-supported college may be expelled for misconduct. In the leading case on this point, Dixon v. Alabama State Board of Education, 294 F.2d 150, 158–159 (5th Cir. 1961), the court set forth these guidelines which it thought colleges should follow in misconduct expulsion cases:

"For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. They should, we think comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be pre-

served without encroaching upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled."

Recently, in Wright v. Texas Southern University, 392 F.2d 728, 729 (5th Cir. 1968), the Fifth Circuit reaffirmed the guidelines set out in *Dixon* and again pointed out that the emphasis in cases of this type is on the fairness of the expulsion or suspension proceedings, when it said:

"In Dixon v. Alabama State Board of Education, 5 Cir. 1961, 294 F.2d 150, this Court held that in matters of disciplinary action a student attending a tax supported institution of higher learning is entitled to notice that he is charged with misconduct, including a statement of the charges alleged in justification of anticipated action against him. Moreover, the student must be given the names of the witnesses against him and must be informed of the nature of their proposed testimony. Lastly, he should be given *the opportunity* to present his defense, orally or in writing, after which the findings of the disciplinary body should be presented in a report available for his inspection.

"This does not mean that the student is entitled to the formality of a trial, in the usual sense of that term, but simply requires that he must be given a fair and reasonable opportunity to make his defense to the charges and to receive such a hearing as meets the requirements of justice, both to the school and to himself. In short, the student at the tax supported institution cannot be arbitrarily disciplined without the benefit of the ordinary, well recognized principles of fair play."

After carefully considering the testimony and other evidence submitted in this case, we are of the opinion that for the most part the hearings were conducted in a fair and impartial manner. The students were given advance notice of the hearings and of the charges against them. They were permitted to call their own witnesses and to cross-examine the witnesses who testified against them—a procedural right which the Court in *Dixon* said does not have to be afforded to them. Furthermore, the members of the Discipline Committee appear to have been very fair in their consideration of the cases arising out of the campus disturbances and we fail to detect any bias on the part of the members against the students who were defendants at the hearings. The verdicts reached by the Discipline Committee at these hearings constitute strong evidence that there was no plan to railroad the defendants into automatic guilty verdicts or to assess them with undeserved harsh penalties. At the May 9 hearings the members of the Discipline Committee had a choice of four verdicts for each defendant: expulsion, suspension, probation or no penalties whatsoever. Of the twelve students who were defendants before the Committee on May 9, none were expelled or suspended. Rather, six were put on probation, and six were assessed with no penalties whatsoever. At the June 2 hearings the emphasis appears to have been on determining the innocence or guilt of each defendant rather than on the assessment of penalties. Of the ten students who were defendants at these hearings, seven were found guilty on at least some of the charges brought against them, while three were found innocent of all charges.

However, the plaintiffs raise another important issue: was it a denial of due process to refuse to permit the plaintiffs to have the assistance of their retained legal counsel at the hearings? There is little jurisprudence on this point. The right to counsel was not listed by the court in *Dixon* as one of the necessary elements of procedural due process which must be afforded to the student at a tax supported university, and there are no appellate cases in this circuit which deal directly with this point. The Second Circuit has held that the student does not have the right to be represented by counsel in disciplinary proceedings. Madera v. Board of Education of City of New York, 386 F.2d 778 (2nd Cir. 1967); Wasson v. Trowbridge, 382 F.2d 807 (2nd Cir. 1967). On the other hand, two district courts have ordered colleges to hold hearings before expelling or suspending students and have further ordered such colleges to permit the students to be represented by legal counsel at such hearings. Zanders v. Louisiana State Board of Education, 281 F.Supp. 747, 752 (E.D.La.1968); Esteban v. Central Missouri State College, 277 F.Supp. 649, 651 (W.D.Mo.1968). Professor Charles Alan Wright takes the position that the right to counsel should be recognized in "major disciplinary proceedings" in colleges and universities. Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1075 (1969). Professor Arthur Sherry is of the opinion that at a university disciplinary proceeding the student's "right to counsel, should the matter appear to him to be of sufficient gravity to make legal assistance desirable, should receive ungrudging recognition * * *." Sherry, Governance of the University: Rules, Rights, and Responsibilities, 54 Calif.L.Rev. 23, 37 (1966).

■ The plaintiffs in this case are faced with the loss of an extremely valuable right. "It is trite, at the least, to say that the obtention of a college degree in his Country has gained tremendous stature and personal importance in the last twenty-five to fifty years." Zanders v. Louisiana State Board of Education, supra, 281 F.Supp. 747, 754 (E.D.La. 1968). Although this is not a criminal proceeding so as to require counsel under the Sixth Amendment, nevertheless, the right to an education has become so vital in our present-day society that the procedure whereby one may lose this right should be heavily stocked with procedural safeguards. We are also of the opinion, however, that disciplinary proceedings which do not involve expulsion or suspension, but which only deal with lesser penalties such as the loss of certain social privileges, do not have to be protected by the same procedural safeguards which are necessary in expulsion or suspension proceedings.

■ Although the right to counsel was not among the rights specifically enumerated by the court in *Dixon*, it cannot be denied that the assistance of an attorney in a trial-type proceeding is of considerable value. An attorney is experienced in legal and quasi-legal proceedings. Counsel is best qualified to prepare a defense to the charges, examine the evidence against the defendant, cross-examine witnesses if such a right is permitted, and to otherwise plead the defending student's cause.

In spite of the invaluable assistance to a defendant in a university disciplinary proceeding, it may well be that in many cases the student will not be at such a disadvantage so as to require the assistance of counsel. But here there is more reason for counsel than in most cases. The prosecution of these cases was conducted by Overton Thierry, a senior law school student, who is now a member of the Louisiana State Bar Association. A member of the Discipline Committee testified that Thierry was chosen to prosecute these cases because of his familiarity with legal proceedings. Even in Wasson v. Trowbridge, *supra*, 382 F.2d 807, 812 (2nd Cir. 1967), where the Second Circuit held that the student did not have the right to be represented by counsel in

expulsion proceedings, the court qualified its holding by saying:

"The requirement of counsel as an ingredient of fairness is a function of all of the other aspects of the hearing. Where the proceeding is non-criminal in nature, where the hearing is investigative and not adversarial *and the government does not proceed through counsel,* where the individual concerned is mature and educated, where his knowledge of the events of March 30th should enable him to develope the facts adequately through available sources, and where the other aspects of the hearing taken as a whole are fair, due process does not require representation by counsel." (Emphasis added.)

Professor Wright noted the above-emphasized language in the *Wasson* case and said:

"It is worth noting that a leading case holding that counsel need not be allowed qualifies this by saying that this is true so long as 'the government does not proceed through counsel.' * * * If universities * * provide their own lawyer to assist a tribunal, in those cases at least the student can hardly be denied the right to his own counsel, even if, as I doubt, there is no right to counsel generally in disciplinary proceedings." 22 Vend.L.Rev. 1027, 1075–1076.

Of course, Thierry was not a lawyer at the time of the hearings. But he he had nearly completed his studies and was to be admitted to the Louisiana State Bar Association in a very few months. Surely, it cannot be doubted that his ability to conduct himself in a proceeding of this sort was likely to be far superior to that of the defendants who, as far as can be ascertained from the record, had no legal education or experience whatsoever.

In view of the particular and special circumstances of this case, we therefore hold that procedural due process requires that these students be permitted to be represented by their retained legal counsel at the hearings. In holding as we do, we want to make it clear that we are limiting this holding to *retained* legal counsel as opposed to appointed counsel. In cases of this kind it is necessary to weigh the interests of the two sides to the controversy. As the Second Circuit said in Wasson v. Trowbridge, supra, 382 F.2d 807, 811 (2nd Cir. 1967):

"Thus to determine in any given case what procedures due process requires, the court must carefully determine and balance the nature of the private interest affected and of the government interest involved, taking account of history and the precise circumstances surrounding the case at hand."

When the right to retained counsel is involved, we feel that any burden which such a right places on the university is inconsequential compared to the vital interest of the student in being represented by counsel. But a similar holding as to appointed counsel would have a far greater effect on the university. If a college administration were forced to provide counsel for defendant students at every disciplinary proceeding, the cost to the school would be considerable. It is no secret that the universities are not unlimited in their funds. It is therefore this Court's opinion that this would be too high a price for a college to pay for the privilege of enforcing discipline among its students.

■ Furthermore, we find an additional infirmity in the proceedings conducted by the Discipline Committee. We find nothing in the record to indicate that the Discipline Committee put its findings into a report open to the plaintiffs' inspection. In Dixon v. Alabama State Board of Education, *supra*, 294 F.2d 150, 159 (5th Cir. 1961), the Fifth Circuit Court of Appeals said, "If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection." In Wright v.

Texas Southern University, 392 F.2d 728, 729 (5th Cir. 1968), the same court said that after the hearing "the findings of the disciplinary body should be presented in a report available for his [the student defendant's] inspection."

Our holdings that retained legal counsel is permissible at the hearings and that a report of the findings of the Discipline Committee should be made available for the plaintiffs' inspection do not compel us to order SUNO to reinstate the plaintiffs as students in good standing at the university. Rather, we believe that the more just result is to order the university to hold new hearings for these plaintiffs, in which they will have the right to be represented by their retained counsel, and after which the findings of the Discipline Committee will be presented in a report open to the plaintiffs' inspection.

Plaintiffs' second cause of action rests upon the assertion that the regulations under which they were charged were vague and did not cover the acts for which they were disciplined with sufficient specificity. Plaintiffs argue that there is no regulation which specifically covers demonstrations and sit-ins.

However, while this argument may be valid in other circumstances, under the particular facts of this case we are of the opinion that it is without merit. Here, we are not dealing with typical non-violent demonstrations or sit-ins. Rather, what was involved here was the forcible occupation of offices and sections of the administration buildings of the university. These acts can never be condoned as nothing more than free expression but constitute hard core conduct designed to disrupt the normal activities of the university.

At the trial of this case Dean Bashful testified that the regulation in question requires that students engage in "responsible social conduct that shall reflect credit upon the University * *." Student Handbook for Southern University in New Orleans, page 16. Certainly, the conduct present in this case could reasonably be found by the defendant not to fit within the standards of discipline required by these regulations.

Counsel for the parties will submit a draft of proposed Order for entry in this case.