**William H. DEPPERMAN, Jr.,**
**Plaintiff,**

v.

**UNIVERSITY OF KENTUCKY et al.,**
**Defendants.**

**No. 2538.**

United States District Court,
E. D. Kentucky,
Lexington Division.

Feb. 21, 1974.

Scott T. Wendelsdorf, Lexington, Ky., William M. Kunstler, New York City, for plaintiff.

John C. Darsie, Jr., R. Bruce Lankford, Lexington, Ky., for defendants.

## MEMORANDUM

SWINFORD, District Judge.

This action challenges the defendants' actions leading to the plaintiff's unwilling departure from the student ranks of the University of Kentucky College of Medicine. On February 9, 1972, the Third and Fourth Year Promotions Committee of the University of Kentucky College of Medicine (hereinafter: Promotions Committee) placed Depperman on probation pursuant to a student regulation purporting to insure conduct becoming potential physicians; a letter from the committee chairman, Dr. David B. Clark, cited a demonstrated inability to function effectively with other people. It is contended that the plaintiff's academic and emotional stability was exemplary and that this action was motivated by the plaintiff's appeal of an undeserved failing grade in psychiatry and the prevalence of a hostile attitude toward Depperman by certain medical professors. On February 11, 1972, both the probation and the failing grade were af-

firmed by the College of Medicine Student Affairs Committee. Two weeks later, the Promotions Committee suspended plaintiff from further studies; although offering to discuss the decision, a letter from Clark indicated that his committee would recommend to the University Faculty Council that plaintiff be terminated as a medical student.

Depperman elected to resign rather than await a final decision from the Faculty Council, but contacted Clark concerning the circumstances under which he might be readmitted. A letter dated May 10, 1972, stated that since the termination was attributable to interpersonal deficiencies rather than an inadequate academic performance, psychiatric counseling would be a pre-requisite to consideration of readmission. Depperman thereupon moved to New York where sessions at the Institute for Advanced Study in Rational Psychotherapy culminated in a recommendation of readmission by Doctor Leon Pomeroy. This action was filed following denial of the plaintiff's petition for readmission by the school admissions committee. The complaint attacks the above decisions as arbitrary and capricious, and assails on vagueness grounds the student regulation under which the suspension was meted. The defendants have filed an alternative motion to dismiss the action *in toto* or certain defendants and grounds for relief.

The attack upon the complaint as a whole argues (1) the defendants' conduct is classifiable as a discretionary function not reviewable by a federal court; (2) Depperman's separation from the University came about not through expulsion but because of his voluntary resignation; (3) the regulation cited by the Promotions Committee is not susceptible to challenge on grounds of vagueness.

It should initially be noted that although the complaint attacks each stage in the procedure leading to the unwilling departure, the claimed deprivations occurring prior to the plaintiff's actual suspension by the Promotions Committee are not generative of a federal cause of action. In Yench v. Stockmar, 10th Cir., 483 F.2d 820 (1973), a college newspaper editor accused of publishing inflammatory articles was placed on probation following an informal hearing which failed to satisfy due process standards. The plaintiff did not protest this dereliction but instead remained a probationary student until his ultimate expulsion a year later for unseemingly conduct at a graduation ceremony. The court refused to consider the fairness of the earlier proceedings resulting in probation because the penalty meted did not ascend to constitutional standards:

> "Such action leading to sanctions of severity less than expulsion do not constitute aggrievements under the Constitution, nor do they invoke the jurisdiction of the federal court regardless of the nature of the incident or the reasons for the disciplinary action. . . .
>
> .    .    .    .    .    .
>
> The fact that the total of all infractions may aggravate the ultimate penalty does not require the courts to go back into the prior events and proceedings which, when they took place, were not such as to constitute an aggrievement in the constitutional sense." Id. at 824.

Sill v. Pennsylvania State University, 3d Cir., 462 F.2d 463, 470–471 (1972); French v. Bashful, E.D.La., 303 F.Supp. 1333 (1969), appeal dismissed, 5th Cir., 425 F.2d 182 (1970). Thus, the "First Claim for Relief", predicated upon the preliminary decisions by the Promotions and Appeals Committees resulting in probation and the affirmance of a failing grade, are not judicially cognizable and will be stricken. The assertions of a due process denial attendant to the action of the Promotions Committee in suspending the plaintiff are sufficient to survive the defendants' motion. Rule 12(b)(6), Federal Rules of Civil Procedure; 5 Wright and Miller, Federal Practice and Procedure, Section 1357.

■ The courts as a general proposition have shunned interference with the operations of colleges and universities.

"(T)he campus presents a unique situation which imposes special considerations in the application of Constitutional protections and 'judicial interposition in the operation of the public school system of the Nation raises. problems requiring care and restraint . . . .'" Robinson v. Board of Regents of Eastern Kentucky University, 6th Cir., 475 F.2d 707, 710 (1973), quoting Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

This avoidance is especially appropriate in actions challenging the institution's regulation of the academic sphere of campus life, a domain in which courts possess minimal expertise; assertions of the plaintiff's exemplary academic performance engender issues incapable of judicial resolution.

"The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school. A medical school must be the judge of the qualifications of its students to be granted a degree; Courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine. . . . Whether the plaintiff should or should not have received a passing grade for the period in question is a matter wholly within the jurisdiction of the school authorities, who alone are qualified to make such a determination." Connelly v. University of Vermont and State Agr. Col., D.Vt., 244 F.Supp. 156, 160–161 (1965).

See Keys v. Sawyer, S.D.Tex., 353 F. Supp. 936, 939–940 (1973).

■ Despite the immunity accorded in academic matters, the determination by educational authorities of a student's academic or emotional fitness may be actionable if the adverse determination complained of is motivated by bad faith:

"Where a medical student has been dismissed for a failure to attain a proper standard of scholarship, two questions may be involved; the first is, was the student in fact delinquent in his studies or unfit for the practice of medicine? The second question is, were the school authorities motivated by malice or bad faith in dismissing the student, or did they act arbitrarily or capriciously? In general, the first question is not a matter for judicial review. However, a student dismissal motivated by bad faith, arbitrariness or capriciousness may be actionable." Connelly v. University of Vermont and State Agr. Col., supra, 244 F.Supp. at 159.

Accord, Dixon v. Alabama State Board of Education, 5th Cir., 294 F.2d 150 (1961), cert. denied, 368 U.S. 930, 82 S. Ct. 368, 7 L.Ed.2d 193 (1961); Keys v. Sawyer, supra, 353 F.Supp. at 940; Lai v. Board of Trustees of East Carolina University, E.D.N.C., 330 F.Supp. 904 (1971); Esteban v. Central Missouri State College, W.D.Mo., 290 F.Supp. 622, 631 (1968), aff'd, 8th Cir., 415 F.2d 1077 (1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970); Jones v. State Board of Education of and for State of Tenn., M.D.Tenn., 279 F.Supp. 190, 200 (1968), aff'd, 6th Cir., 407 F.2d 834 (1969), cert. dismissed, 397 U.S. 31, 90 S.Ct. 779, 25 L.Ed.2d 27 (1970).

■ The defendants also contend that this action is barred by Depperman's failure to carry the recommendation of the Promotions Committee to the University Faculty Council, the ultimate decisionmaking body in questions of student suspensions. While one who has ignored available administrative remedies may frequently not properly claim a constitutional abridgement, Becker v. Oswald, M.D.Pa., 360 F.Supp. 1131 (1973); Keys v. Sawyer, supra, 353 F. Supp. at 939, the court's ignorance of the posture adopted by the University regarding the status of a student pending final decision by the Faculty Council

prevents automatic application of that rule. Further, it is alleged that the treatment accorded by both the Kentucky College of Medicine and other schools reveals the attitude that the decision of the Promotions Committee was final. Opinions addressing the exhaustion concept in this setting have generally required only "such prior reference to local institutional authority as may be necessary to assure that the action complained of is final within the institution in the sense that it is ripe for adjudication." Stevenson v. Board of Ed. of Wheeler County, Georgia, 5th Cir., 426 F.2d 1154, 1157 (1970), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970). Accord, Karr v. Schmidt, W.D. Tex., 320 F.Supp. 728, 730 (1970), reversed on other grounds, 5th Cir., 460 F.2d 609 (1972), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). While Depperman might very well have secured a reversal of the Promotions Committee recommendation through appeal to the Faculty Council, the allegations of the complaint are sufficiently definite in this regard to survive a motion to dismiss.

The defendants' motion alternatively seeks dismissal of (1) the "Fifth Claim for Relief"; (2) certain individual defendants; (3) claims against the University of Kentucky for monetary damages; (4) those portions of the complaint attacking on grounds of vagueness the regulation utilized for Depperman's suspension.

The complaint's Fifth Claim, relating to the failure of the admissions committee to readmit the plaintiff upon completion of psychological treatment, is insulated from dismissal at this time. This contention is predicated not upon the "contractual ground" supposed by the defendant, but upon the allegation that the refusal to readmit was in bad faith. The request for dismissal of Bosomworth, Lambson, and Clark will also be overruled. Contrary to the defendants' allegations, the complaint alleges bad faith and arbitrary conduct on the part of Lambson and Clark. While Bosomworth may not have offered direct participation in the actions complained of, his controlling position as vice-president of the medical center dictates his retention as a defendant. League of Academic Women v. Regents of Univ. of Cal., N.D.Cal., 343 F.Supp. 636 (1972); Rodriguez v. Swank, N.D.Ill., 318 F. Supp. 289, 296–297 (1970), aff'd, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971).

The defendants correctly argue that the Eleventh Amendment to the U. S. Constitution bars an action against the University for recovery of damages, Brennan v. University of Kansas, 10th Cir., 451 F.2d 1287, 1290 (1971); Hamilton Mfg. Co. v. Trustees of State Colleges in Colo., 10th Cir., 356 F.2d 599 (1966); Stewart v. Butz, W.D.Ky., 356 F.Supp. 1345 (1973), and that the institution is not a "person" as contemplated by the Civil Rights Act, 42 U.S.C. § 1981 et seq, Braden v. University of Pittsburgh, 3d Cir., 477 F.2d 1, 7 (1973); Sellers v. Regents of University of California, 9th Cir., 432 F.2d 493, 500 (1970), cert. denied, 401 U.S. 981, 91 S. Ct. 1194, 28 L.Ed.2d 333 (1971); Derby v. University of Wisconsin, E.D.Wis., 325 F.Supp. 163, 164 (1971). Legislation conferring corporate status on the university, K.R.S. 164.160, is not alone sufficient for this court to infer waiver. Hamilton Mfg. Co. v. Trustees of State Colleges in Colo., supra; Brennan v. University of Kansas, supra; Daniel's Adm'r v. Hoofnel, 287 Ky. 834, 155 S. W.2d 469 (1941). The claims for monetary relief against the University will be dismissed. Board of Trustees of Arkansas A & M College v. Davis, 8th Cir., 396 F.2d 730 (1968), cert. denied, 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968).

It is also argued that the complaint should be dismissed insofar as it challenges the following regulation:

"Any student may be denied permission to continue enrollment in the Col-

lege of Medicine if, in the opinion of the Faculty Council, his knowledge, character or mental or physical fitness cast grave doubts upon his potential capabilities as a physician."

The plaintiff asserts that this standard is rendered unconstitutional on vagueness grounds by the ruling in Baggett v. Bullitt, 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964), condemning laws "forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." The court disagrees. First, collegiate regulations are not judged by the degree of specificity required for penal statutes, Esteban v. Central Missouri State College, supra; Jones v. State Board of Education of and for State of Tenn., supra, 279 F. Supp. at 202. Regulations defining student conduct "are not used in a vacuum", but must be interpreted in the context of their intended import, Lowery v. Adams, W.D.Ky., 344 F.Supp. 446, 455 (1972). The rule, like that upheld in Papish v. Board of Curators of University of Missouri, 8th Cir., 464 F.2d 136, 143 (1972), reversed on other grounds, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973), "can easily be understood by anyone who possesses the intelligence to gain admission to an accredited institution of higher learning." This judicial philosophy has resulted in opinions approving standards outlawing "disruptive conduct", Sill v. Pennsylvania State University, supra; Lowery v. Adams, supra; actions not conforming to "ordinary and accepted social customs", Papish v. Board of Curators of University of Missouri, supra; Esteban v. Central Missouri State College, supra; requirements that students exhibit "responsible social conduct that shall reflect credit upon the university", French v. Bashful, supra; and prohibition of "(1) Disrespect for University authority . . . (3) Any other infractions of standards of conduct that require severe disciplinary action." Jones v. State Board of Education of and for State of Tenn., su-

pra; see also 16 Am.Jur.2d "Constitutional Law" Section 552, note 1. The "Fourth Claim for Relief", alleging the facial unconstitutionality of this standard, will be stricken.

An order in conformity with this memorandum is this day entered.