Stewart L. HINES, Appellant,

v.

George RINKER and Robert Talley, members of the School of Medicine's faculty; Charles E. Hollerman, Dean of the School of Medicine of the University of South Dakota; Charles D. Lein, President, University of South Dakota; Celia Miner, President, Board of Regents of the State of South Dakota; and Vincent Protsch; Betty Redfield; Robert Bartron; Bonnie Bunch; Fredric Cozad; Scott Heidepriem and Michelle Tapken, all members of the Board of Regents of the State of South Dakota, Individually and in their official capacity, Appellees.

No. 81–1107.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1981.

Decided Dec. 28, 1981.

Joseph G. Rimlinger (argued), Sioux Falls, S. D., for appellant.

Deming Smith (argued), and Sarah Richardson, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellees.

Before STEPHENSON and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Stewart L. Hines appeals from a summary judgment entered in the District Court[1] for the District of South Dakota dismissing

his complaint seeking money and extraordinary relief because his academic dismissal from the University of South Dakota School of Medicine constituted a violation of substantive due process.

For reversal appellant argues that summary judgment was inappropriate because there were genuine issues of material fact as to whether he was expelled as a result of his reliance on the stated school policy for successfully completing the internal medicine course and whether appellees' conduct was arbitrary and capricious. In response appellees argue that appellant is not entitled to judicial review of his academic dismissal under *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and that there was no showing that the dismissal was the result of arbitrary and capricious conduct. For the reasons discussed below, we affirm the district court.

First, we recognize that in reviewing a decision of a district court to grant summary judgment, we must apply the same standard as the district court. *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir. 1979). Summary judgment should not be entered unless the pleadings, stipulations, affidavits and admissions in the case show that there exists no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *see Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).

In passing upon a motion for summary judgment, the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits filed in the case. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The record discloses the following facts. Appellant was dismissed from the Universi-

---

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota.

ty of South Dakota Medical School on January 25, 1979, for receiving a final grade of "F" in internal medicine.[2] The dismissal was pursuant to the Rules and Requirements published in the 1978–79 School of Medicine Bulletin (Bulletin).[3] Specifically, Rule 4b provides in pertinent part, "[A] student receiving two or more grades of D or one grade of F is automatically dismissed from the School of Medicine." Bulletin at 29. The Bulletin also provides that "[T]he grade of I (incomplete) may be given in cases where the student, for some satisfactory reason, has been unable to complete all the required work." Bulletin at 30.

The course outline for the internal medicine clerkship was written by Dr. Robert Talley, the course instructor, and contained a description of the course requirements and the grading system that Dr. Talley would use to evaluate the students.[4] It contained the following requirements:

*Patient Work-Ups*

Each student will be required to work-up 30 patients during the medical rotation, approximately three patients a week .... A complete work-up will consist of:

1) a written history and physical examination ...

2) the problem list with a diagnostic plan, therapeutic plan and educational plan for each problem

3) a reference article

4) certain laboratory procedures 1 through 4 are all required [to be submitted to the office] within 24 hours of seeing the patient.

*Case Presentations*

During attending rounds the morning following the patient's work-up, the student should be prepared to present the patient's case ...

Course Outline at 2–3.

At mid-term Dr. Talley sent appellant an evaluation memo reminding him that he was behind in the course requirements. The memo stated, "[R]emember by the completion of this clerkship you must have completed ten sets of objectives, presented 30 patients and have chart audits done on 30 patients."

At the end of the clerkship, December 29, 1978, appellant had only turned in seven chart audits and ten presentations.[5] On January 23, 1979, appellant turned in the remaining chart audits and presentations dated December 18 and 27, 1978.[6] Appel-

---

2. This is appellant's second academic dismissal from the Medical School. In 1975, appellant's freshman year, he received grades of D in Anatomy and Histology. Having received two grades of D he was automatically dismissed pursuant to the then existing rules and regulations established by the faculty. Appellant appealed his dismissal to the Circuit Court in Clay County, South Dakota. The court enjoined the Medical School from dismissing him on the ground that the rules had not been promulgated pursuant to the South Dakota Administrative Procedure Act, S.D.C.L. 1–26. Exhibit L. Appellant was readmitted to the Medical School for the 1976–1977 year, and retook the courses in Anatomy and Histology. He received a C in both courses at that time.

3. The Bulletin contains guidelines and rules concerning scholastic performance in the determination of promotion, dismissal and graduation that have been adopted by the Medical School faculty. It is available to all students.

4. The grades for the internal medicine clerkship were computed according to the following formula:

| | | |
|---|---|---|
| Article Review | 5% | |
| Chart Audit | 12% | |
| Case Presentation | 13% | |
| Attending Physician's evaluation | | 25% |
| Objective Achievement | 20% | |
| Final Examination | 25% | |

Course outline at 5. Dr. Talley stated that the system of grading was so designed that failure in one category alone would not result in an F if the points given in other areas were high enough. *Hines v. Rinker*, No. CIV. 80–4097 (D.S.D. Dec. 3, 1980), *Affidavit of Dr. Talley* at 6.

5. Dr. Talley stated that of the seven chart audits turned in, five did not include the required reference article list and that of the ten presentations turned in, three did not include the required problem list. *Id.* at 5.

6. Dr. Talley stated that the late work was first found by Dr. Radack in his mailbox. Dr. Radack refused to sign his approval because he was not one of appellant's attending physicians. Dr. Radack also questioned the dates on the work-ups. The physician who signed the

lant neither requested an extension nor offered any explanation as to why the work was turned in late. The work was rejected as untimely and appellant was not given credit. Appellant also failed the written final examination and received a composite score of 55.3% for the course; 61% is required for passing. Dr. Talley's written evaluation of appellant stated:

Stewart received an F in internal medicine. The reason for this failure was his poor performance in the written examination and his inability to work-up or present the proper number of patients during the clerkship. His work in general was marginal in all areas. At the end of the clerkship he was still unable to present a patient with any intelligence and evaluation. His late papers do not even indicate a problem list being written on most of them. He seemed unwilling to do even a minimal amount of work and his basic knowledge is extremely poor.

Appellant sought review of the dismissal alleging that he should have been given the grade of incomplete based on the following provision contained in Dr. Talley's course outline:

*Incomplete Grades*

Any student who fails to complete ten sections of factual data or fails to present and be scored upon thirty patients during his junior rotation will be given an incomplete grade in medicine. He/she will be required to make up the deficiency before he/she can successfully complete the internal medicine clerkship.

Course Outline at 6.

Appellant further supported his contention with an affidavit signed by four students in the course stating that at the beginning of the semester Dr. Talley had told them that "an incomplete would be awarded any student who did not complete the 30 presentations and audits, and that this incomplete could be made up at any time before the end of the school year." *Hines v. Rinker*, No. CIV. 80–4097 (D.S.D. Oct. 8, 1980), Complaint, Exhibit D. Dr. Talley responded to this claim, "I do not believe I said anything like that. I may have referred to the bulletin where it says the grade of I may be given, in cases where the student for some satisfactory reasons has been unable to complete all the required work." *Id.*, Affidavit of Dr. Talley at 9.

Appellant obtained administrative review of his dismissal on nine occasions, at every level up through the Board of Regents of the University. Dr. Charles E. Hollerman, Dean of the School of Medicine, responded to appellant's argument by interpreting the incomplete grade provision in the course outline in conjunction with the requirement that chart audits and presentations were to be submitted to the office within twenty-four hours of seeing the patient. He stated:

[M]y interpretation based on this consideration is that the guideline regarding incompletes is applicable only to a student who for some reason, illness, lack of patient materials, etc., arrives at the last week of the clerkship one or more short of the 30 required audits or presentations, but who throughout the clerkship has achieved an average of three such work-ups per week, all of which had been completed and submitted within 24 hours of seeing the patient.

*Hines v. Rinker, supra, Response to Grievance Petition*, Exhibit R at 2.

Appellant's dismissal was affirmed at every level. Appellant appealed the decision of the Board of Regents to the South Dakota Circuit Court. That court held that appellant had received all the protections of the academic process and, based upon *Board of Curators v. Horowitz, supra*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124, dismissed the appeal and affirmed the action taken by the Board of Regents. Exhibit AA.

Appellant then filed a motion for a preliminary injunction in the district court alleging that appellees' refusal to change his grade to incomplete was arbitrary and capricious. Appellees moved for a summary judgment and in support of their motion submitted affidavits of the members of the Medical School faculty and the Board of

slips told Dr. Talley that the presentations "were of a poor level." *Id.*

Regents who had reviewed appellant's dismissal. In response appellant submitted the affidavits of Dr. Oliver and Dr. Saint Pierre, residents in internal medicine with whom appellant worked during his rotation. Both affidavits state that appellant recorded his work-ups on patient charts within the required time. Appellant also submitted the affidavit of Dr. Colberg, a classmate, stating that Colberg had also relied on Dr. Talley's statements and the course outline provision regarding incompletes and turned in chart audits and presentations after the end of the semester.[7]

The district court granted appellees' motion finding:

> In light of the 24 hour requirement under the section entitled "Patient Work-ups" on page 2 of the outline, and the explanation of when the grade I (Incomplete) may be given, on page 30 of the Bulletin, as well as Dr. Talley's explanation of the importance of the 24 hour requirement, and his full explanation of how Plaintiff's grade was computed, under the same formula as that applied to all students, the Court specifically finds that there was no evidence of arbitrary or capricious conduct on the part of any of the defendants.

*Hines v. Rinker, supra,* slip op. at 6.

We affirm the district court based on our conclusion that viewing the facts in the light most favorable to appellant, appellees were entitled to judgment as a matter of law.

Appellant's basic allegation is that his failing grade was the result of his reliance on the incomplete grade provision in the course outline and Dr. Talley's comments to four students that incompletes would be given. He argues that appellees' failure to apply the course outline provision as written and change his grade to an incomplete constitutes arbitrary and capricious conduct in violation of substantive due process.

■ The first issue before this court is whether the federal judiciary can review academic dismissals. At the time of the decision in *Board of Curators v. Horowitz,*

*supra,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124, several courts had implied, in *dicta,* that a university student might have a cause of action for violation of substantive due process arising out of an academic dismissal from a university. *See Greenhill v. Bailey,* 519 F.2d 5 (8th Cir. 1975); *see also Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976); *Depperman v. University of Kentucky,* 371 F.Supp. 73 (D.Ky.1974); *Connelly v. University of Vermont & State Agricultural College,* 244 F.Supp. 156 (D.Vt. 1965). The *Horowitz* decision leaves open whether such a cause of action exists. *See Stevens v. Hunt,* 646 F.2d 1168 (6th Cir. 1981). However, even if such a cause of action does exist, plaintiffs would have to show arbitrary and capricious conduct on the part of university officials. *Board of Curators v. Horowitz, supra,* 435 U.S. at 91, 98, 98 S.Ct. at 955, 959.

To establish such arbitrary and capricious action, the plaintiff must show that there is no rational basis for the university's decision, *Greenhill v. Bailey, supra,* 519 F.2d at 10 n.12, or that the decision to dismiss was motivated by bad faith or ill will unrelated to academic performance. *Gaspar v. Bruton,* 513 F.2d 843, 845 (10th Cir. 1975).

■ Further, no genuine issue of material fact is presented by various instances of alleged past misconduct on the university's part where "the record provides ample evidence of the dismissed student's scholastic ineptitude." *Jansen v. Emory University,* 440 F.Supp. 1060, 1063 (N.D.Ga.1977), *aff'd,* 579 F.2d 45 (5th Cir. 1978). "The fact that the total of all infractions may aggravate the ultimate penalty does not require the courts to go back into prior events and proceedings ...." *Depperman v. University of Kentucky, supra,* 371 F.Supp. at 75. *See Olsson v. Board of Higher Education,* 49 N.Y.2d 408, 426 N.Y.S.2d 248, 250, 402 N.E.2d 1150, 1152 (1980) (While it is true that in the usual case a principal must answer for the statements of its agent, such a rule cannot be applied mechanically where the principal is an educational institution

---

**7.** Dr. Colberg was the only other student who attempted to turn in late work-ups and presentations. He did not get credit for the late work but because he passed the final exam, he did pass the course.

and the result would be to override a determination concerning a student's academic qualifications).

 Here it is clear that appellant failed internal medicine due to a combination of factors—failing the written final examination, failing to properly present a patient, and failing to turn in required work on time. This was appellant's second academic dismissal from the Medical School. *See* note 2 *supra.* The entire Medical School faculty reviewed appellant's grade and dismissal and, in so doing, reviewed a summary of academic information on appellant including his MCAT scores, National Board scores, medical school grades and comments from surgery and internal medicine clerkship evaluation relating to appellant. The faculty found that appellant's grade and dismissal should not be overturned. The court cannot say that appellees' failure to change appellant's grade was arbitrary and capricious. Respect for the discretion of those best qualified to make such judgments dictates that the Medical School and not the federal courts should determine the qualifications of appellant to continue his medical studies.

There being no genuine issues as to any material fact, we affirm the district court.