**Bernard H. GREENHILL, Appellant,**

v.

**Ray V. BAILEY et al., Appellees.**

**No. 74–1630.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1975.

Decided July 21, 1975.

admission to the University of Iowa College of Medicine as a junior. His two prior attempts to gain admission there had been unsuccessful. In the interim he had completed two years at the College of Osteopathic Medicine and Surgery,[1] where he passed his courses but ranked near the bottom of the class.

An entrance requirement for the admission of students with advanced standing at the University of Iowa College of Medicine is a passing score on Part I of an examination prepared by the National Board of Medical Examiners. Because Greenhill had failed to pass that test in April, 1972, he had to sit for the examination again in June, after the school year had already started. He successfully completed the test at that time, and on August 4, 1972, the Admissions Committee voted to accept him. He thus began his junior year at the College of Medicine approximately seven weeks late.

The junior year program at Iowa consists of a series of clerkships in various medical specialties. Because of his late admission to the school, Greenhill missed his clerkship in surgery as well as one week of his clerkship in psychiatry.[2] He nonetheless commenced his studies, attaining passing grades in several minor clerkships but failing two major clerkships, obstetrics-gynecology and internal medicine.

. Raymond Rosenberg, Des Moines, Iowa, for appellant.

Arthur O. Leff, Iowa City, Iowa, for appellees.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal, we are asked to review for substantive and procedural defects the academic dismissal of a student from the University of Iowa College of Medicine.

The record furnishes us with the following relevant facts: on October 1, 1971, Bernard H. Greenhill applied for

When the Junior Promotions Committee convened on June 5, 1973, to determine whether each member of the junior class should be promoted to the senior year of study, it voted to recommend the suspension of Greenhill from medical school. On June 14, the Medical Council and Executive Committee of the College of Medicine unanimously voted to support that recommendation.

Because personal appearances before these committees are ordinarily not per-

---

. 1. During that time he also spent a brief period in Spain, attempting to study medicine at the University of Madrid, as well as at Drake University in Iowa, where he took graduate courses in science.

2. He was scheduled to make up the missed clerkship at the end of the academic year.

mitted,[3] Greenhill appealed by letter, admitting his deficiencies and seeking to re-enter the school at approximately the level of a second-semester sophomore.[4] In addition, Greenhill's father, a dermatologist, wrote the school in his behalf on July 4, 1973. The Medical Council rejected these appeals. After the suspension became final, the Assistant Dean of the medical school, Dr. Baker, completed a "Change of Status Form" which he sent to the Liaison Committee on Medical Education of the Association of American Medical Colleges in Washington, D.C. On the form, dated July 9, 1973, Dr. Baker indicated that Greenhill had been dismissed "due to Poor Academic Standing" and that the apparent reason therefore was "[l]ack of intellectual ability or insufficient preparation."

Greenhill filed suit under 42 U.S.C. § 1983, alleging that he was denied both procedural due process, by the school's failure to give him notice and an opportunity for a hearing to contest his dismissal, and substantive due process, by its judging his academic performance against nonobjective standards.[5] Following a hearing, the District Court dismissed the action, concluding that the procedural safeguards of the Fourteenth Amendment have no application to the dismissal of a student for failure to meet academic standards and finding that Greenhill's dismissal was not, in fact, arbitrary. *Greenhill v. Bailey,* 378 F.Supp. 632 (S.D.Iowa 1974). Greenhill filed this appeal. Under the particular circumstances presented here, we disagree with the trial court on the issue of procedural due process and remand the case with directions to order an administrative hearing in accordance with this opinion.

## I.

It is true that courts will ordinarily defer to the broad discretion vested in public school officials and will rarely review an educational institution's evaluation of the academic performance of its students. *E. g., Keys v. Sawyer,* 353 F.Supp. 936 (S.D.Tex.1973); *Connelly v. University of Vermont and State Agricultural College,* 244 F.Supp. 156 (D.Vt. 1965); *Foley v. Benedict,* 122 Tex. 193, 55 S.W.2d 805 (1932); *see Brookins v. Bonnell,* 362 F.Supp. 379 (E.D.Pa.1973); *Wong v. Regents of the University of California,* 15 Cal.App.3d 823, 93 Cal. Rptr. 502 (1971), and cases discussed therein. Notwithstanding this customary "hands-off" policy, judicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property. *E. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir. 1973). It is well established that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection. *Id.; Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

3. The Student Handbook of the College of Medicine provides that appeals taken from the decisions reached by the Medical Council and Executive Committee (on the recommendations of the Promotions Committee) "shall be submitted by the student in writing * * *." Although there was some testimony that students are "occasionally" permitted to appear personally before these committees, most witnesses agreed that written appeals were the standard practice, absent special circumstances.

4. Reinstatement at such a level would have allowed Greenhill to take an introductory course in clinical medicine, a course which he had not taken before entering the College of Medicine.

5. He named as defendants the members of the University's Board of Regents, the President of the University, the Academic Dean, the Dean of the College of Medicine, the Assistant Dean thereof, the members of the Junior Class Promotions Committee, and the members of the Medical Council and Executive Committee. It is undisputed that the defendants' acts constituted state action.

Greenhill's dismissal from the University of Iowa College of Medicine is not an event which we can consider in isolation. As we noted *supra,* the dismissal itself was accompanied by notification of the Liaison Committee of the Association of American Medical Colleges in Washington, D.C., that Greenhill lacked "intellectual ability" or had insufficiently prepared his course work. Greenhill has argued in this appeal, and appellees have all but conceded, that with such information available to all accredited medical schools in the country, he will be foreclosed from pursuing his education not only at Iowa but everywhere else as well.[6] The information communicated outside the medical school goes beyond a factual statement that Greenhill had failed his junior year, or a mere recitation of academic grades, and suggests that Greenhill is intellectually unfit to undertake the study of medicine at all.[7]

We hold that the action by the school in denigrating Greenhill's intellectual ability, as distinguished from his performance, deprived him of a significant interest in liberty, for it admittedly "imposed on him a stigma or other disability that foreclose[s] his freedom to take advantage of other * * * opportunities."[8] *Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707. *See also* Kirp, *Schools as Sorters: The Constitutional and Policy Implications of Student Classification,* 121 U.Pa.L.Rev. 705, 775–85 (1973). The case before us is not unlike *Wellner v. Minnesota State Junior College Board, supra,* where we held that a non-reappointed teacher had been deprived of an interest in liberty as the result of written charges of racism placed by the school in his permanent file—a file to which prospective employers would likely have access. Here, as there, the individual is entitled to notice of the "charges" against him and a hearing to permit him an opportunity to clear his name.[9]

We are well aware that there has long been a distinction between cases concerning disciplinary dismissals, on the one hand, and academic dismissals, on the other. *See Brookins v. Bonnell, supra,* 362 F.Supp. at 382, and the cases collected therein. Our holding today is not an effort to blur that distinction but rather an acknowledgment that the dictates of due process, long recognized as applicable to disciplinary expulsions (and suspensions of significant length),[10] may

---

6. Appellees' brief recognizes the likelihood that Greenhill will find admission to other schools impossible "because of his dismal record." Brief for Appellees at 25. At oral argument before this court, counsel for appellees stated that the letter to the Liaison Committee would be made available to any school to which Greenhill's record might be sent.

7. Dr. Baker's assurances that he would provide recommendations in support of Greenhill's applications to other medical schools do not, in our view, diminish the impact of that letter.

8. Similarly, an individual may be deprived of an interest in liberty where the state makes "any charge against him that might seriously damage his standing and associations in his community." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *see Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

9. In view of our decision on Greenhill's "liberty" claim, it is unnecessary for us to pass on his alternative contention that, once admitted

to the College of Medicine, he had a property interest in continuing and completing his medical education. In this context, however, we note that the status of students at a graduate facility, to which admission is limited and determined on a competitive basis, may differ significantly from that of pupils at the elementary or high school level, where a free education is normally guaranteed by state law and attendance is required. *See Goss v. Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975).

10. *E. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Strickland v. Inlow,* No. 72–1774(8th Cir., June 18, 1975), *on remand from Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Jones v. Snead,* 431 F.2d 1115 (8th Cir. 1970); *Esteban v. Central Mo. State College,* 415 F.2d 1077, 1089 (8th Cir. 1969), *cert. denied,* 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970); *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir. 1967); *Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). *See*

apply in other cases as well, where the particular circumstances meet the criteria articulated by the Supreme Court in *Board of Regents v. Roth, supra,* and *Perry v. Sindermann, supra.*

## II.

"Once it is determined that due process applies, the question remains what process is due." *Goss v. Lopez, supra,* 419 U.S. at 577, 95 S.Ct. at 738, *quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "Identification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action." *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975).

■ Appellees have conceded that Greenhill was not afforded full procedural due process although they emphasize that he was permitted to appeal in writing the decision to dismiss him. Under the circumstances of this case, we deem that opportunity inadequate. Counsel for appellees acknowledged at oral argument that Greenhill was never given any specific notice that "lack of intellectual ability" was one of the grounds for his dismissal or that other medical schools would have access to this information. Greenhill's own appeal by letter and the subsequent letter from his father, each submitted prior to the completion of the "Change of Status Form" on July 9, 1973, did not afford him any meaningful opportunity to rebut those "charges" or to attempt to clear his name.

We think that, at the very least, Greenhill should have been notified in writing of the alleged deficiency in his intellectual ability, since this reason for his dismissal would potentially stigmatize his future as a medical student elsewhere, and should have been accorded an opportunity to appear personally to contest such allegation.

We stop short, however, of requiring full trial-type procedures in such situations. A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum. The presence of attorneys or the imposition of rigid rules of cross-examination at a hearing for a student like Greenhill would serve no useful purpose, notwithstanding that the dismissal in question may be of permanent duration.[11] But an "informal give-and-take" between the student and the administrative body dismissing him—and foreclosing his opportunity to gain admission at all comparable institutions— would not unduly burden the educational process and would, at least, give the student "the opportunity to characterize his conduct and put it in what he deems the proper context." *Goss v. Lopez, supra,* 419 U.S. at 584, 95 S.Ct. at 741.

## III.

■ We therefore reverse and remand for further proceedings consistent with this opinion. The District Court shall order appellees to conduct an appropriate administrative hearing and shall either direct reinstatement of appellant pending such hearing, *see Wellner v. Minnesota State College Board, supra,* 487 F.2d at 157 (denial of petition for rehearing), or shall fix a reasonably prompt time for such hearing, provided that reinstatement shall be ordered in the event appellees fail to comply with the designated schedule, *see Brookins v.*

---

generally Annot., *Right of Student to Hearing on Charges before Suspension or Expulsion from Educational Institution,* 58 A.L.R.2d 903 (1958).

11. Compare *Goss v. Lopez,* 419 U.S. 565, 583–84, 95 S.Ct. 729, 740–41, 42 L.Ed.2d 725 (1975). In the context of disciplinary expulsions or dismissals, where school officials

must act as a fact-finding body rather than a board of academic review, due process may well require additional procedural safeguards. *See Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150, 158–59 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); *cf. Goss v. Lopez,* 419 U.S. 565, 584, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975).

*Bonnell, supra,* 362 F.Supp. at 384; *cf. Jones v. Snead, supra,* 431 F.2d at 1117. The purpose of the hearing, as set forth in an appropriate notice, shall be to provide Greenhill with an opportunity to clear his name by attempting to rebut the stigmatizing material made available to other schools. Procedural due process under these facts requires no more.[12] *See Board of Regents v. Roth,* 408 U.S. 564, 573 n.12, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

---

12. Since this case must be remanded for further administrative proceedings, we do not reach Greenhill's contention that he was denied substantive due process. However, we think this additional caveat is appropriate: For a court to overturn a student's dismissal on substantive grounds it must find that such dismissal was arbitrary and capricious. *See Keys v. Sawyer,* 353 F.Supp. 936 (S.D.Tex.1973); *Connelly v. University of Vermont and State Agricultural College,* 244 F.Supp. 156 (D.Vt. 1965). That standard is a narrow one, to be applied only where administrative action "is not supportable on any rational basis" or where it is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *First National Bank v. Smith,* 508 F.2d 1371, 1376 (8th Cir. 1974). Educational institutions can judge a student's performance better than can a court of law, particularly in an advanced field such as the study of medicine. *Depperman v. University of Kentucky,* 371 F.Supp. 73, 76 (E.D.Ky.1974); *Connelly v. University of Vermont and State Agricultural College, supra,* 244 F.Supp. at 160–61. Only the most compelling evidence of arbitrary or capricious conduct would warrant our interference with the performance evaluation (grades) of a dismissed student made by his teachers.