**Donald Lee ESPENSHADE, Plaintiff,**

v.

**The PENNSYLVANIA STATE UNIVERSITY, et al., Defendants.**

**Civ. A. No. 82–1001.**

United States District Court,
M.D. Pennsylvania.

May 4, 1983.

---

See also, D.C., 556 F.Supp. 131.

Donald Lee Espenshade, pro se.

Marybeth A. Stanton, Allen C. Warshaw, Deputy Attys. Gen., Harrisburg, Pa., for defendants Floyd & Comm. of Pa.

R. Mark Faulkner, State College, Pa., for Pa. State, Oswald and Sheffer.

John Feather, Jr., Lebanon, Pa., for Dauphin County Legal Services Assn.

## MEMORANDUM

CALDWELL, District Judge.

Before us for disposition is the motion for summary judgment filed on February 23, 1983, on behalf of defendants Pennsylvania State University (PSU), John W. Oswald, and Gaye W. Sheffler (hereinafter PSU defendants or defendants). On March 7, defendants filed their brief, together with supporting affidavits and a statement of material facts. On March 22, plaintiff filed his opposing brief, after which PSU defendants filed a reply brief on April 4.

Because plaintiff had experienced difficulty in gaining access to the transcript of his deposition testimony and did not have the benefit of reviewing it prior to filing his

brief, we entered a memorandum and order on April 13, in which we granted plaintiff leave to file a supplemental brief. Our memorandum (page 3) contained the following directive: "It is to be clearly understood that this brief should be short and to the point and is limited to matters in the deposition that plaintiff wishes the court to consider in its disposition of the motion." Our order stated, "The aforesaid [supplemental] brief shall conform strictly to the directives contained in our accompanying memorandum." Plaintiff on April 25, 1983, filed a document, the main body of which consists of 21 pages, with an appendix of 21 additional pages plus 18 more pages of letters and other materials. Despite plaintiff's disregard of the directive in our memorandum and order, we have considered all relevant matters of record in reaching our decision on defendants' summary judgment motion. For the reasons stated in the discussion which follows, the motion is granted in part and denied in part.

### I. The "Shammed Records" Claim

Throughout the proceedings in the present matter, plaintiff has asserted that PSU's medical school, the Hershey Medical Center (HMC), where plaintiff was enrolled as a medical student in 1967–1968, has circulated false information regarding his academic record in three courses. It appears undisputed that plaintiff withdrew from the institution on or about April 1, 1968, and he concedes that at the time he "was aware of the possibility—not the certainty—the possibility that I may not have satisfactorily completed the three courses in question." Espenshade Deposition at 7. The record establishes that F or failing grades were considered by HMC as plaintiff's official grades.

Plaintiff, however, contends that oral representations were made to him in 1968 that he could return and complete this unsatisfactory work without penalty and that he would also be readmitted as a medical student should he desire to return. Plaintiff enrolled again at HMC in 1971 but was admitted only as a non-degree student. He received grades of B in the three courses, which were not accorded credit in PSU's graduate or medical school.

During 1972 plaintiff requested that a record of his work at HMC be sent to several places, specifically the University of Pennsylvania School of Veterinary Medicine, the Colorado State University College of Veterinary Medicine and Biomedical Sciences, and the University of California Los Alamos Scientific Laboratory. It appears that these mailings occurred in February of 1972.

■ Plaintiff in his deposition conceded that this was the only occasion on which his HMC records were sent to other institutions at his request with the exception of possibly some earlier requests. Accordingly, it is difficult to understand plaintiff's assertions that he "has not been employed in the Electronic Engineering field for ten years . . . because of the shammed records." Brief of Plaintiff at 65. Nevertheless any shammed records claim appears to be time barred, and on this issue summary judgment is granted for the PSU defendants.

Once again, as in our memorandum of April 5, 1983, in which we granted judgment on the pleadings for defendant Dauphin County Legal Service Association (DCLSA), we have examined applicable Pennsylvania statutes of limitations. It is clear that plaintiff discovered his problem with HMC records in 1972; plaintiff's brief indicates that on July 23, 1972, he received such information. Plaintiff's Brief at 67. As we noted in our prior memorandum, plaintiff's action against DCLSA was not filed until nearly a decade after his alleged injury by that organization. The alleged injury by the PSU defendants occurred even earlier. Since plaintiff's complaint against these defendants does not fall within the kinds of actions encompassed by 42 Pa.C.S.A. § 5528 (fifteen years), § 5529 (twenty years), § 5530 (twenty-one years), or § 5531 (no limitation),[1] the statute of limitations has run.

---

1. Although we did not refer to this statutory provision in our earlier memorandum, it, of

Although we could terminate our discussion at this point, we feel we should comment further in order to clarify matters for the pro se plaintiff. Examination of the Pennsylvania statutes of limitations that would have applied to this action at the time it accrued indicates that a one year statute of limitations may have been applicable. We reach this conclusion because plaintiff's claim alleges that PSU conspired to injure him in his business or reputation. *See Loughrey v. Landon,* 381 F.Supp. 884 (E.D.Pa.1974). Assuming, however, that plaintiff's claim against the PSU defendants also alleges tortious interference and conspiracy to interfere with a prospective contractual relationship, *see Koppers Co., Inc. v. Krupp-Koppers GmbH,* 517 F.Supp. 836 (W.D.Pa.1981), he is likewise time barred. Plaintiff knew at least by July, 1972, that he disagreed with HMC regarding his academic records and therefore would have had six years in which to file an action. See 42 Pa.C.S.A. § 5527(6), effective June 27, 1978.

The fact that plaintiff went to HMC to attempt to discuss his academic problems in the fall of 1977 or at other times does not toll the running of the statute. Instead it reinforces our determination that plaintiff knew or should have known that the grades and information related thereto which he considered inaccurate were still part of his official record at HMC. Nor is our decision altered by plaintiff's letter of March 21, 1983, to defendants' counsel requesting that official transcripts of his HMC grades be sent to himself and to three institutions. This request does not permit plaintiff to elude the bar of the statute of limitations, which ran, at the latest, approximately five years ago. If defendants provide these

transcripts with the same information plaintiff contested in 1972, plaintiff has no present viable remedy. It was incumbent that he file suit in 1978 at the latest. Having failed to do so, he is forever barred from asserting his "shammed records" claim in this court or the state courts of Pennsylvania.[2]

## II. The Age Discrimination and Retaliation Claims

Although the PSU defendants have argued eloquently in favor of our granting summary judgment on the age discrimination and retaliation claims, their position must be rejected. In addressing the present summary judgment motion, as with all such motions, we are required under Federal Rule of Civil Procedure 56(c) to grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

Originally the PSU defendants raised a jurisdictional issue regarding notice of filing with the Equal Employment Opportunity Commission (EEOC) of a charge arising out of the age discrimination complaint plaintiff filed with the Pennsylvania Human Relations Commission (PHRC) at docket number E–18894. PSU's reply brief, however, concedes that jurisdiction properly lies with this court.

Our remaining focus therefore must be on the question of whether any genuine issues of material fact remain. PSU defendants agree that plaintiff has established a prima facie case of age discrimination in that (1) he belonged to the class (ages 40 to 70) protected by the ADEA at the time in question, (2) he applied at PSU's

---

course, was inapplicable to plaintiff's claims against DCLSA since this statute deals with real and personal property matters.

2. In arriving at this conclusion, we have not reached the question of whether plaintiff has stated a cognizable federal claim. Plaintiff's "shammed records" claim obviously does not fall under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* or the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Since plaintiff also indicated that

his complaint was filed for other violations of the U.S. Constitution, plaintiff possibly was aiming at a due process claim. *See, e.g., Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Greenhill v. Bailey,* 519 F.2d 5 (8th Cir.1975); *Ramos v. Texas Tech University,* 441 F.Supp. 1050 (N.D.Texas 1977). At any rate, plaintiff was required to bring suit within the statute of limitations provisions we have discussed.

Capitol Campus for the one year fulltime teaching position for which he was qualified, (3) he was not selected despite his qualifications, and (4) the position was filled by an individual younger than plaintiff. *See, e.g., Cuddy v. Carmen,* 694 F.2d 853, 857 (D.C.Cir.1982); *Smithers v. Bailar,* 629 F.2d 892, 895 (3d Cir.1980). As the court in *Cuddy* noted,

> Once a prima facie case has been established, the employer has the burden of producing evidence tending to show that the applicant was denied employment for a legitimate, nondiscriminatory reason. [footnote omitted] If the employer does so, and if his evidence is credible, the plaintiff must show by a preponderance of the evidence that the employer's asserted legitimate reason is merely pretextual.

694 F.2d at 857. In the present matter PSU has argued that plaintiff would be unable to demonstrate that PSU's legitimate, nondiscriminatory reasons for hiring the younger applicant were pretextual and that plaintiff could not show that age was "a determining factor" in the hiring decision, i.e. that "age made a difference in the employer's decision not to hire him." 694 F.2d at 856–57.

■ It appears obvious to us, however, that the question whether age was "a determining factor" turns on credibility. Plaintiff has alleged and his deposition testimony indicates that he was told by Professor Wesley Houser that there were three reasons he was not hired: his age, his years away from the engineering profession, and the other applicant's status as a graduate of PSU's Capitol Campus. Espenshade Deposition at 37. The affidavit submitted by Houser disputes plaintiff's allegations, and PSU recognizes this factual dispute. PSU argues, however, that the actual hiring decision was made by Dr. William A. Welsh, Jr., who headed the Capitol Campus Science, Engineering and Technology Program. Though Dr. Welsh's affidavit denies any consideration or mention of age in the hiring decision, we nevertheless find that a genuine issue of material fact exists and that it is not within our province to assess credibility in handling a summary judgment motion. The motion therefore must be denied.

■ Plaintiff's retaliation claim is brought pursuant to 29 U.S.C. § 623(d), which in relevant part prohibits discrimination against an employee because he has filed a charge or otherwise opposed unlawful age discrimination. The PSU defendants have argued that numerous student transfers or withdrawals from the class taught by plaintiff in the Capitol Campus winter term of 1981 were unrelated to the age discrimination complaint filed with the PHRC in September of 1980. Moreover, they assert that students have the right to withdraw from or change sections of a course for the first ten (10) days of a term if vacancies exist in another section of the same subject or in another course (or if the student simply wishes to drop a course) and that students left plaintiff's mathematics class out of fear of the course. Plaintiff has not denied that students may have been leery of the difficulty level of his class but also has indicated that he protested the transfers and that some occurred into classes that were already at capacity.

■ PSU defendants have cited no authority to support their contentions that retaliation could not occur under the circumstances here. We believe retaliation against an employee can occur when individuals are encouraged to exercise a right that they would not have exercised but for the actions of an employer. Likewise retaliation may exist when an employer cooperates in actions taken against an employee when such actions could not occur without the employer's assent. One aspect of the retaliation claim, which PSU defendants have not addressed, is the damages issue. Among the mass of documents submitted for our consideration, we have noted that plaintiff appears to have lost no wages or other compensation during the time at which the retaliation claim arose. Moreover, since the class terminated in 1981 as scheduled, a demand for injunctive relief is likewise inappropriate. This problem with

damages, which we do not resolve at this time, obviously does not occur with regard to plaintiff's age discrimination claim.

III.  Conclusion

Having determined that genuine issues of material fact exist with regard to plaintiff's age discrimination and retaliation claims, the portions of defendants' summary judgment motion addressed to those claims is denied.  The motion is granted with regard to the shammed records claim pursuant to the bar imposed by the applicable statutes of limitations.