Artemio Arturo ALANIS, Jr., Appellant,

v.

**UNIVERSITY OF TEXAS HEALTH SCI-
ENCE CENTER, and John Ribble, Mar-
garet McNeese, Roger Bulger, Joe
Wood, Wallace Gleason, Pat Carver,
Joel Yeakley, and Allen Cooper, Indi-
vidually and in Their Official Capaci-
ties as Officials of the University of
Texas Health Science Center at Hous-
ton, Appellees.**

No. 01–91–01076–CV.

Court of Appeals of Texas,
Houston (1st Dist.)

Dec. 23, 1992.

Artemio Arturo Alanis, Jr., pro se.

Will Pryor, Dan Morales, Mary F. Keller, Jorge Vega, Michael Winget–Hernandez, Austin, for appellees.

Before DUNN, DUGGAN and MIRABAL, JJ.

OPINION

DUNN, Justice.

This is an appeal from a summary judgment in favor of the appellees, the University of Texas Health Science Center (U.T.H.S.C.), John Ribble, Margaret McNeese, Roger Bulger, Joe Wood, Wallace Gleason, Pat Carver, Joel Yeakley, and Allen Cooper. We affirm.

Initially the appellant, Artemio Arturo Alanis, Jr., sued the appellees, alleging violations of his procedural and substantive due process rights arising from his dismissal from medical school, as well as libel, slander, mental anguish, breach of contract, and breach of public trust. He also alleged membership in and representation of a class of persons discriminated against due to an alleged conspiracy to deprive them of their constitutional rights. The appellant sought injunctive relief, including reinstatement to medical school, and actual and punitive damages of $2,250,000.

The appellees entered a general denial, and asserted the affirmative defenses of governmental immunity and statute of limitations.

The appellees moved for summary judgment on May 22, 1990, claiming sovereign immunity on the contract claims against U.T.H.S.C. and its officials acting in their official capacities, no violations of Mr. Alanis' due process rights because the acts of the officials were not arbitrary or capricious, and no deprivation of Mr. Alanis' equal protection or due process rights. The appellees further argued that, notwithstanding the sovereign immunity defense, they did not breach any contractual obligations to the plaintiff. As summary judgment proof, the appellees attached Mr. Alanis' academic record, some 37 pages of material, including his grades; application to medical school, letters from Mr. Alanis to various faculty members; memos from Dr. McNeese and others to the file and to Mr. Alanis; the report from Mr. Alanis' May 15, 1986, accident at the school; and portions of the minutes from the Student Evaluation and Promotions Committee (SEPC) meeting where his first leave of

absence was granted. Mr. Alanis' academic file reflected that during the 1983–84 academic year, he received Fs in biochemistry, behavioral science, microbiology, and physiology. He also received an incomplete in Neuroscience. The memos and letters in the file indicate that Mr. Alanis was having health and personal problems that were affecting his academic performance.

Other letters in Mr. Alanis' file indicated he was willing to submit to psychiatric and ear-nose-throat evaluations to determine the origin of the health problems he was claiming as the cause of his poor academic performance. The psychiatric evaluation revealed that Mr. Alanis was mildly depressed; however, the psychiatrist also noted that Mr. Alanis had "chronic feelings of low self-esteem, anxiety, and difficulty with intimate relationships, all of which seem related to his childhood." The doctor further noted that, in his opinion, without ongoing, long-term therapy, Mr. Alanis would not be successful academically.

On September 18, 1990, the court granted a partial summary judgment in favor of the appellees, disposing of Mr. Alanis' libel and slander claims due to the expiration of the statute of limitations. Mr. Alanis is not complaining about this ruling on appeal.

Mr. Alanis then filed a second amended original petition on April 19, 1991, complaining of the actions of Drs. McNeese and Ribble, individually and in their official capacities at the medical school. In this petition, the appellant sought a declaratory judgment, injunctive relief, actual damages of $2,000,000, and punitive damages of $4,000,000 under 42 U.S.C. § 1983 (West 1986). Shortly thereafter, on April 23, 1991, the appellant filed his first supplemental petition wherein he sued Ribble, Wood, Carver, Gleason, Yeakley, and Cooper for all of the same violations that he alleged in his second amended original petition against Ribble and McNeese. The appellees answered and filed special exceptions.

The appellant's third amended original petition, filed on May 6, 1991, sued McNeese, Bulger, Ribble, Wood, Carver, Gleason, Yeakley, and Cooper, individually and in their official capacities. This petition alleged a course of action by McNeese that was improper and unlawful, violated Alanis' due process, and was contrary to the regents' rules, regulations, and guidelines of the U.T.H.S.C. Mr. Alanis further alleged that McNeese, while acting as dean of student affairs, maliciously and with ill will acted arbitrarily and capriciously, further denying his rights of due process. He alleged that these actions by McNeese were both within and beyond the scope of her authority. He further alleged that McNeese continued her malicious and unlawful actions by secreting parts of Mr. Alanis' academic file. He sought damages from the remaining defendants for their negligence for permitting McNeese to violate his civil rights. He further alleged that the defendants gave information about his suitability as a medical student to a "certain centralized clearing house" and therefore, made it impossible for him to register with any other medical school. The appellant sought declaratory judgment and attorneys' fees under TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986), and actual and punitive damages and attorneys' fees under 42 U.S.C. § 1983 in the amount of $6,000,000.

On May 16, 1991, Mr. Alanis moved for a partial summary judgment on his substantive and procedural due process violations claims. His motion reserved for determination by a jury the amount of damages to be awarded.

The appellees responded and re-urged their original motion for summary judgment filed the previous year. They also filed a supplement to this motion on June 3, 1991. The response urged summary judgment for U.T.H.S.C. on all of Mr. Alanis' claims on the basis of sovereign immunity, and for all defendants on the basis of qualified immunity and because of varying statute of limitations arguments. The response further argued that although the appellant characterized his dismissal as based on "suitability," the appellant was dismissed for academic reasons, and, as a matter of law, was afforded the required

due process. The appellees re-urged their summary judgment motion, arguing that Mr. Alanis failed to allege that the appellees' conduct was such a substantial departure from accepted academic norms as to demonstrate they did not exercise professional judgment, citing *Eiland v. Wolf,* 764 S.W.2d 827, 835 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

In the defendants' supplement, they urged the court to find that Mr. Alanis' liberty interest was not violated because he failed to show that some defendant publicized false and stigmatizing information about him. They further asserted the defense of qualified immunity because no defendant violated clearly established law of which a reasonable official would have known.

Mr. Alanis failed to bring forward his fourth amended petition as part of his record. At the time the defendants' summary judgment was granted, Mr. Alanis had filed his fifth amended petition. While it is true that the order granting leave to file this pleading, and Mr. Alanis' supplemental and second supplemental affidavits, was not signed until August 20, 1991, the docket sheet entries reflect that the court had these pleadings before it on June 24, 1991. The docket sheet and order reflect the court denied the defendants' motion to strike Mr. Alanis' fifth amended petition.[1] The docket sheet further reflects that the court took Mr. Alanis' partial motion for summary judgment under advisement. Therefore, we will consider the court's ruling based upon the allegations in the fifth amended petition, the parties' cross-motions for summary judgment, and the summary judgment evidence. Following is a summary of the evidence before the trial court at summary judgment.

Mr. Alanis first began attending medical school during the 1983–84 school year. He received failing grades in all five classes. Mr. Alanis had discussed the possibility of obtaining a leave of absence with one of the administrators; however, this was not approved until the 1983–84 academic year was over. Mr. Alanis did later successfully remediate one class. During this time, he attributed his scholastic troubles to problems with his health and with his girlfriend.

When Mr. Alanis' file and leave request were reviewed by the Student Evaluation and Promotions Committee (SEPC) on June 21, 1984, the committee voted to permit Mr. Alanis to repeat his first year of medical school; however, he did not do so. Rather, again citing health and other relationship problems, Mr. Alanis applied for another leave of absence. The school granted the leave on the condition that he undergo psychiatric therapy prior to his return to school. Mr. Alanis' doctor was to periodically provide the school with evidence that he was continuing in therapy, and at the end of the year, provide the school with a statement regarding Mr. Alanis' ability to resume medical school. After prompting from Dr. McNeese, Mr. Alanis' psychiatrist submitted a report to the University. The doctor indicated that if Mr. Alanis continued psychotherapy, he should be able to succeed academically.

Mr. Alanis returned to medical school in the fall of 1985. During the first quarter of that school year, he was one hour late to his developmental analysis examination. He also missed three other exams during the spring of 1986, including his physiology final. He missed that exam due to an automobile accident, and also missed the scheduled make-up exam because of car trouble.

In June 1986, Dr. Wood spoke with Mr. Alanis regarding his excuse for missing the make-up physiology exam. Dr. Wood requested Mr. Alanis seek psychiatric care and warned him of the possible consequences of missing another exam. Mr. Alanis was informed by Dr. Wood that he was apparently falling into a pattern of missing examinations as he had done before. Mr. Alanis was told that by requesting extra consideration, failing to complete his exams on schedule, and by leaving the

---

1. On page 483 of the transcript, the docket notation, dated June 24, 1991, is as follows: "M to Strike 5th Amended—denied as court rules factual supplementation only—no new parties; no new causes of action."

campus without taking his exams or without administrative approval, he had jeopardized his U.T.H.S.C. standing. Dr. Wood's memo indicates that Mr. Alanis believed the requirements were unfair and harsh, and that the school was making unreasonable demands upon him.

Mr. Alanis initially met with appellees McNeese, Wood, and Gleason on August 12, 1986, to discuss his academic problems. He presented his position orally and also submitted it in writing two days later. It was in this letter that the appellant requested his case be reviewed by the SEPC. The SEPC informed Mr. Alanis on August 15, 1986, that his academic standing would be discussed at their August 25, 1986, meeting and gave him an opportunity to appear. He failed to appear.

The SEPC notified Mr. Alanis on August 26, 1986, that he was being dismissed because of his incomplete grade in physiology (due to the missed make-up exam) and because of his previous academic failures.

After the SEPC voted to dismiss him, Mr. Alanis appealed to the dean of the medical school, Dr. John Ribble. He discussed his case with Dr. Ribble and also submitted a letter. When Dr. Ribble denied Mr. Alanis' appeal, he then appealed to the president of the medical school, Dr. Roger Bulger. As a consequence of that appeal, Dr. Bulger remanded Alanis' case to the SEPC for further consideration. The record reflects that the SEPC discussed Mr. Alanis' medical school performance at its September 9 and September 17 meetings.

When Dr. Bulger remanded the appellant's case, he asked Dr. McNeese to outline more specifically the reasons for Mr. Alanis' dismissal, which she did in a September 12, 1986, memo to Dr. Wood. These reasons included a recitation of Mr. Alanis' past poor academic performance, including the fact that in three years he had been unable to complete even the first year of study, and his repeated absences from exams. She concluded by saying that the SEPC felt he was unsuitable to practice medicine. Apparently, the SEPC did not include this specific reason when it originally notified Mr. Alanis of his dismissal. At the time the SEPC first met, it believed that the incomplete physiology grade would be converted to a failing grade. This alone would justify dismissal. However, the physiology department chose to retain the incomplete because it had not previously informed the students of a policy to convert incomplete grades to failing grades. Thus, when the incomplete grade was not converted to failing, the SEPC felt it necessary to articulate the other reasons for Mr. Alanis' dismissal in order to protect itself from litigation.

The SEPC notified Mr. Alanis on September 23, 1986, that his situation would be reviewed again at the SEPC's September 29 meeting. The appellant was invited to and attended that meeting. At that meeting, Mr. Alanis was told what had transpired at the September 17 meeting and given the opportunity to discuss this with the SEPC. Subsequent to the SEPC's decision, Mr. Alanis filed suit.

In two points of error, the appellant alleges that the trial court erred in granting the appellees' motion for summary judgment and denying his motion for partial summary judgment. He argues there have been violations of his procedural and substantive due process rights and deprivation of his liberty interest in his medical career.

Standard of Review

The standard for appellate review of a summary judgment for a defendant is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact about one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Pleadings do not constitute summary judgment proof, but simply outline the issues. *Delaney v. University of Houston*, 792 S.W.2d 733, 735 (Tex.App.—Houston [14th Dist.] 1990, no writ). When deciding whether there is a disputed material fact issue, precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference must

be indulged in favor of the nonmovant. *Id.; Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex.1971). A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

■ When both parties move for summary judgment, all the evidence accompanying both motions should be considered in deciding whether to grant either party's motion. *Dallas County Appraisal Dist. v. Institute of Aerobics Research*, 766 S.W.2d 318, 319 (Tex.App.—Dallas 1989, writ denied).

■ Historically, the courts have refused to review a school's decision to dismiss a student except under limited circumstances, such as allegations and proof that the school officials acted arbitrarily and capriciously, or otherwise abused the authority vested in them. *Eiland*, 764 S.W.2d at 833. If the dismissal was based upon academic grounds, the school's decision is not to be disturbed unless it was motivated by bad faith or ill will unrelated to academic performance, or was based on arbitrary and capricious factors not reasonably related to academic criteria. *See Hines v. Rinker*, 667 F.2d 699, 703 (8th Cir.1981). Later decisions of the United States Supreme Court have not only affirmed, but have further restricted the standard of evaluating suits based upon academic dismissals. *Eiland*, 764 S.W.2d at 833.

Parties Against Whom Appeal is Taken

Although it appears from the appeal bond that Mr. Alanis seeks to appeal the summary judgment order in favor of all of the original defendants, Mr. Alanis' brief neither raises points of error nor attacks the judgment in favor of Joel Yeakley, Allen Cooper, Pat Carver, or the University of Texas Health Science Center as a State agency. Therefore, Mr. Alanis has waived his right to appeal against these parties, and we affirm the judgment on those parties without addressing the merits of Mr. Alanis' appeal. *See* TEX.R.APP.P. 74(d) and 74(f).

The merits of Mr. Alanis' arguments and points of error as they relate to John Ribble, Margaret McNeese, Roger Bulger, Joe Wood, and Wallace Gleason, individually and in their official capacities as officials at the University of Texas Health Science Center, are addressed in this opinion.

Procedural Due Process

The Supreme Court distinguished the constitutional requirements for a disciplinary dismissal from one based upon academic factors and expressly declined to "further enlarge the judicial presence in the academic community." *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 91, 98 S.Ct. 948, 955–56, 55 L.Ed.2d 124 (1978). The medical student in *Horowitz* was complaining that her dismissal was for disciplinary reasons because the faculty considered her personal hygiene habits and timeliness in keeping clinical schedules as part of its determination of whether the student would make a good medical doctor. *Id.* at 91 n. 6, 98 S.Ct. at 955 n. 6. In affirming the University's actions, the Court noted that a school typically considers and weighs a variety of factors when making an academic evaluation. *Id.*

■ Mr. Alanis complains that his right to procedural due process was violated because of the manner in which the SEPC handled his dismissal. His motion for summary judgment contemplates three categories of dismissals—academic, disciplinary, unsuitability—each with its own standard of review. He focuses on the notice surrounding his dismissal for nonacademic reasons—unsuitability to practice medicine. Thus, we conclude he must believe that his

situation belongs in the category of unsuitability dismissals. However, he cites no case law, and we can find none, that suggests we should recognize this particular category of dismissal. Rather, we believe the correct analysis is whether one's suitability to practice medicine is an academic consideration. As one court noted,

> [w]hen a medical student is dismissed due to failure to attain the proper standard of scholarship, two questions may be involved; the first is was the student in fact delinquent in his studies or unfit for the practice of medicine? The second question is, were the school authorities motivated by malice or bad faith in dismissing the student, or did they act arbitrarily or capriciously? Generally, the first question is not a matter for judicial review.

*Mustell v. Rose*, 282 Ala. 358, 211 So.2d 489, 493, *cert. denied*, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968).

We conclude, contrary to the appellant's assertion, unsuitability to practice medicine, in the context of this case, is an academic reason supporting dismissal. There is no suggestion of any disciplinary considerations in the record before us that cause us to believe this was a disciplinary dismissal. Therefore, the analysis of the amount and type of notice Mr. Alanis was due is appropriate in the context of academic dismissals.

The United States Supreme Court has distinguished between disciplinary and academic dismissals and found that in the case of academic dismissals, fewer procedural requirements are necessary in order to protect an individual's rights. *Horowitz*, 435 U.S. at 86, 98 S.Ct. at 953. This is because, unlike in the disciplinary dismissal situation, a hearing may be useless in determining the truth concerning scholarship. *Id.* at 88, 98 S.Ct. at 954. Thus, the *Horowitz* Court held that the fourteenth amendment due process clause did not require *any* hearing before a medical school dismissed a student for academic reasons. *Id.* at 86, 98 S.Ct. at 953.

Mr. Alanis argues that "[i]t is agreed by everybody, and the summary judgment evidence is conclusive that, prior to his termination, he did not receive any notice of alleged academic deficiencies, and rather, the above quoted dismissal letter [of August 15, 1986] was the only notice that the appellant received to inform him of any alleged academic deficiencies." He argues that the appellees did not inform him of the nonacademic reasons for his dismissal. However, as noted above, unsuitability to practice medicine is an academic reason under the facts of this case.

Nevertheless, Mr. Alanis' assertion of no notice is simply not supported by the record. Mr. Alanis was aware of his poor academic performance during his first year. He was aware of the possibility of dismissal, and discussed this with several of the deans. He took a leave of absence because his health was interfering with his ability to perform adequately in medical school. He knew he had missed several final exams and make-up exams, and was aware of the impact that could have on his academic career.

■ Against the backdrop of due process, notice does not necessarily have to be written communication. Rather, in order to satisfy due process prior to dismissal of a student for deficiencies in meeting minimum academic performance, school authorities need only advise the student in any form. *Gaspar v. Bruton*, 513 F.2d 843, 851 (10th Cir.1975). All that is required is that the student be made aware, prior to termination, of his failure or impending failure to meet those standards. *Id.* Mr. Alanis received such notice in the August 26, 1986, letter, in his various meetings with the administration, and with his conversations with Dr. Wood.

Under the Supreme Court's standards discussed above, Mr. Alanis was afforded adequate procedural due process throughout his conflict with the medical school. We find no violation of Mr. Alanis' right to procedural due process under the fourteenth amendment.

**Greenhill v. Bailey Liberty Interest**

■ Mr. Alanis argues that he is entitled to a greater degree of procedural due pro-

cess because his liberty interest in pursuing a medical career has been compromised by the appellees' distribution of Mr. Alanis' "Student Exit Form" containing the notation that Mr. Alanis is "unsuitable to practice medicine."

As reflected in the facts of *Greenhill v. Bailey*, in 1973, when Mr. Greenhill was dismissed from the University of Iowa College of Medicine for various academic failures, the University notified the Liaison Committee of the Association of American Medical Colleges in Washington, D.C. that Mr. Greenhill lacked intellectual ability or had insufficiently prepared his course work. *Greenhill v. Bailey*, 519 F.2d 5, 8 (8th Cir.1975). This information was then freely available to medical schools all over the country. *Id.* The eighth circuit held that in situations such as before it, the plaintiff needed notice and an opportunity for a meaningful hearing. *Id.* at 9.

Mr. Alanis argues that his situation is governed by the *Greenhill* decision and suggests that this Court order his reinstatement to medical school or an appropriate administrative hearing. Mr. Alanis points this Court to his second supplemental affidavit of plaintiff to support plaintiff's motion for partial summary judgment as his evidence that the information as to his unsuitability to practice medicine was communicated to others without his notice. We note that although the order granting leave to file Mr. Alanis' supplemental affidavit was not signed until August 20, 1991, the docket sheet notations indicate that the court had this pleading when it considered the cross-motions for summary judgment. We will consider it as well.

We initially note that in *Greenhill*, the school administration automatically communicated to the Liaison Committee of the Association of American Medical Colleges in Washington, D.C., that Mr. Greenhill lacked intellectual ability or had insufficiently prepared his course work. *Id.* at 8. In this case, under 20 U.S.C. § 1232g (West 1986 & Supp.1992), the Family Educational Rights and Privacy Act, without authorization from Mr. Alanis, the Medical School could not communicate any information

other than that he had withdrawn from school. The *Greenhill* court held that it was the school's action "denigrating Greenhill's intellectual ability" which had deprived him of his liberty interest. *Id.* The court held that Mr. Greenhill should have been notified in writing of the alleged deficiency in his intellectual ability. *Id.* at 9. Further, Mr. Greenhill was never afforded an opportunity to appear before the University officials, and the written communication available to Mr. Greenhill alone was insufficient to provide him with procedural due process. *Id.* The court did not hold that a trial-type procedure was required, but rather "informal give-and-take between the student and the administrative body dismissing him" would be appropriate. *Id.*

The fifth circuit has held that "liberty is not infringed by the *mere presence* of derogatory information in *confidential* files and the government has not infringed this liberty unless it perpetuates *untrue* charges." *Sims v. Fox*, 505 F.2d 857, 864 (5th Cir.1974) (en banc), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975) (emphasis in original); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ortwein v. Mackey*, 511 F.2d 696, 698–99 (5th Cir.1975).

Mr. Alanis did appear before the SEPC and had another opportunity to appear which he declined. He also met another time with Drs. Wood, Gleason, and McNeese and with Ms. Carver. Mr. Alanis had discussed his academic problems with several of the school officials. The SEPC had required Mr. Alanis to seek psychiatric counseling to help him overcome his problems in dealing with medical school. Dr. McNeese testified that she had not communicated the information from the student exit form to anyone, nor is she aware of any other publication of the form. She testified that such information would come from the registrar's office, if at all. Mr. Alanis' affidavit indicates he gave his permission to the University to send his record to his Congressman, to Baylor Medical School, and to the Health Science Center in San Antonio. The record in his affidavit of his request to Baylor shows not that he

was totally rejected by Baylor College of Medicine, only that they would not consider him as a second year student. He would have to apply as an entering student. The record also does not indicate that he was refused admission to the Health Science Center in San Antonio, nor does it show he was harmed when he permitted his congressman to have a copy of his records.

■ To raise a liberty interest violation by the State, the information made public must impose a stigma or other disability that forecloses Mr. Alanis' freedom to take advantage of other employment opportunities. *See Campos v. Guillot,* 743 F.2d 1123, 1125 (5th Cir.1984). He must further show that he did not receive a meaningful hearing to clear his name. *Id.* The record reflects that Mr. Alanis had an opportunity for a hearing and to give input to the SEPC on other occasions. The minutes of the September 29, 1986, meeting, which Mr. Alanis attended, reflect the following:

Mr. Alanis appeared before the Committee. Dr. Gleason told him that the Committee had asked him to meet with them to give him an opportunity to shed light on any of the information in his record. He read to Mr. Alanis from the minutes of the September 17 meeting the following excerpt:

"Dr. Gleason read Dr. Wood's memorandum to Dr. McNeese summarizing Art Alanis' record and the reasons for his dismissal, copies of which had been distributed to the members. Dr. Bulger had asked for the Committee to supply additional information to him concerning the background for Mr. Alanis' dismissal. The letter informing him of the Committee's action stated that the decision was based on his unexcused absence from the Physiology exam, resulting in an irremediable incomplete in that course, which he had previously failed, and his other failing grades from his first attempt at the first year. Dr. Bulger felt that Mr. Alanis could produce sufficient evidence in a courtroom to excuse his absence from the examination. In his memorandum Dr. Wood reviewed Mr. Alanis' record of physical complaints, missed examinations, and academic difficulties and concluded that Mr. Alanis' academic record and his behavior in dealing with his academic difficulties were grounds for his not continuing in medical school."

Dr. Gleason asked Mr. Alanis if he had any requests to make and told him that this was his opportunity to address the Committee. Mr. Alanis said that he was trying to attend classes on a regular basis, he had taken tests in Pathology and Pharmacology, and had passed the Pharmacology test but was not sure about the Pathology test.

Mr. Alanis said he had a copy of his blue book and he found that there were several documents that were not included in the blue book that he thought were relevant to his case.... Dr. McNeese explained to Mr. Alanis that at least some of the documents were in the Student Affairs office and accessible to the Committee although they had not been inserted in the blue book. Mr. Lindloff told Mr. Alanis that not every document was appropriate to file in the blue book. Dr. Gleason told Mr. Alanis that if he would submit the documents to the Committee they would be copied and distributed to the members so they could be considered at this point. Mr. Alanis declined to do this unless someone would verify that they had not been in his blue book. Mr. Lindloff said that that was irrelevant, and suggested that Mr. Alanis sign a statement to the effect that he was now submitting the documents to the Committee. Mr. Alanis declined to do so, and said he needed to consult with Dr. Bulger. There was some discussion about the possibility of adjourning and reconvening at a later date, but there was a consensus from the Committee and Mr. Alanis that it would be in Mr. Alanis' best interest to conclude the matter as quickly as possible. Dr. Gleason again asked Mr. Alanis if he would release the documents to the Committee for their consideration before they reached a decision at the end of the meeting, and Mr. Alanis again declined to do so without

verification that the documents had not been in his blue book.

Mr. Alanis said that he was the sort of person who had some 'bad breaks' but that his problems were genuine and that he had worked very hard to overcome them. He said that he was an honest person and 'principled to an extent.' He felt that there was a lot of evidence that he worked hard, and that Dr. Caprioll, his advisor, would testify concerning his character. He said that if given another chance he would leave willingly if he had another problem. He said that Dr. McNeese and Ms. Carver had recommended that he see a psychiatrist, which he had done, but that he did not return after his initial visit because he did not have a psychiatric problem.

He said that he was puzzled as to why the grounds for his dismissal had been changed from academic, as stated to him in his letter of dismissal from Dr. Wood, to his behavior. Mr. Lindloff said that Dr. Bulger had requested the Committee to consider other issues that were raised in his meeting with Mr. Alanis.

Mr. Alanis was asked if he had anything further to add. As he did not, he left the room.

Dr. McLaughlin made a motion, seconded by Dr. MacFadyen, that the Committee restate its decision reached at the September 17 meeting because no evidence had been presented that would support any change in its position that Mr. Alanis' academic difficulty and behavior in responding to that difficulty were sufficient reasons for him not to remain in school. The motion carried unanimously.

As noted above, *Greenhill* makes it clear that the court does not require a trial-type procedure in order to protect a student's liberty interest, but rather an informal give and take is all that is required. *Greenhill*, 519 F.2d at 9. We find that, as a matter of law, Mr. Alanis was given sufficient opportunity throughout his dismissal process to interact with the administration officials such that there is no violation of his liberty interests.

## Substantive Due Process

■ Mr. Alanis' fifth amended petition alleges that all defendants acted in an arbitrary and capricious manner and that Dr. McNeese's actions were motivated by maliciousness and ill will. Substantive due process challenges strike at the decision itself and not at the procedures afforded the student in the academic decision-making process. *See Greenhill*, 519 F.2d at 5.

As proof of his allegations of substantive due process violations, Mr. Alanis alleges he had an agreement with Dr. Chappel regarding the way his grades would be handled, in light of his leave of absence. However, assuming arguendo there was an agreement, it is of no moment. The record reflects Mr. Alanis' final application for a leave of absence came in April 1984, after the 1983–84 academic year was completed, and he had failed his final exams. Mr. Alanis further alleges that Dr. McNeese's actions towards him were retribution because he challenged her authority. Mr. Alanis alleges that Dr. McNeese's behavior substantially departed from accepted academic norms and was not an exercise of her professional judgment.

Mr. Alanis also seems to argue that because the first part of medical training is classroom instruction, the only measure of whether a person is successful should be the grade awarded for that class. It appears he is distinguishing his case from other substantive due process cases because those involved clinical courses where the evaluation was more subjective. He believes that the SEPC's evaluation of him was subjective, not based solely on the grades he received, thus the decision to dismiss him was inappropriate. However, we note the plaintiff in the *Ewing* case had "marginally passing grades, a number of incompletes and make-up examinations, and repeated courses," and also failed the National Board of Medical Examiners test. *Eiland*, 764 S.W.2d at 834 (citing *Board of Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 219, 106 S.Ct. 507, 510, 88 L.Ed.2d 523 (1985)). In analyzing that dismissal, the Supreme Court noted that a faculty committee is at liberty to use

all of the information it has available to it when making its decision. *See Horowitz,* 435 U.S. at 82–83, 98 S.Ct. at 951.

The Supreme Court, in *Ewing,* articulated the standard against which substantive due process claims in academic settings were to be analyzed. *Ewing,* 474 U.S. at 226–29, 106 S.Ct. at 513–15. In 1989, that standard was adopted by this Court in *Eiland v. Wolf,* 764 S.W.2d at 835–36. The *Ewing* Court determined that it was not in a position to substitute its judgment for that of a faculty committee, which "was uniquely positioned to observe [appellant's] judgment, self-discipline, and ability to handle stress, and was thus especially well-suited to make the necessary subjective judgment of his prospects for success in the medical profession." *Ewing,* 474 U.S. at 227, 106 S.Ct. at 514.

■ Since the *Ewing* decision, when a court evaluates a substantive due process claim based on allegedly arbitrary action, it "may not override the faculty's professional judgment in academic matters unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Eiland,* 764 S.W.2d at 835 (citing *Ewing,* 474 U.S. at 225, 106 S.Ct. at 513). The appellate courts have thus "independently reviewed the record for minimum professional judgment evidence; once found, such evidence was considered sufficient to justify judgment against the student as a matter of law." *Eiland,* 764 S.W.2d at 835 (and cases cited therein). In order to have a cause of action for substantive due process violations, Mr. Alanis must show that Dr. McNeese's actions were arbitrary and capricious; that is, that there was no rational basis for the University's decision, or that the decision to dismiss was motivated by bad faith or ill will unrelated to his academic performance. *Ewing,* 474 U.S. at 220–26, 106 S.Ct. at 510–14.

■ If any rational basis exists, even though there is also evidence of arbitrary action, the trial court must uphold the faculty committee's decision unless it finds that the decision was "such a substantial departure from accepted academic norms as to conclusively demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.; see also Tobias v. University of Texas,* 824 S.W.2d 201, 210 (Tex.App.—Fort Worth 1991, writ denied), *petition for cert. filed,* 61 U.S.L.W. 3303 (U.S. Sept. 29, 1992) (No. 92–574). Where a reviewing court has found minimum evidence of professional judgment, such evidence has been considered sufficient to justify judgment against a student as a matter of law. *Tobias,* 824 S.W.2d at 210; *see Levi v. University of Texas at San Antonio,* 840 F.2d 277, 280 (5th Cir.1988); *Clements v. Nassau County,* 835 F.2d 1000, 1004–1005 (2d Cir.1987) (in cases involving academic decisions, university is entitled to summary judgment if evidence exists to show rational basis for decision).

In this case, the record before us contains ample evidence that Mr. Alanis was experiencing great difficulty in successfully completing the medical school curriculum. There is evidence from both sides that Mr. Alanis had missed exams, failed exams, and, in the three years he had attended U.T.H.S.C., had not satisfactorily completed all of the first year's courses. Using the standard before us, we find that the summary judgment evidence establishes, as a matter of law, the appellees exercised their professional judgment and did not act in an arbitrary and capricious manner when the SEPC determined that Mr. Alanis was unsuitable for the practice of medicine.

### Section 1983 Cause of Action

In Mr. Alanis' fifth amended petition, he seeks damages against all defendants based upon 42 U.S.C. § 1983, claiming their actions were arbitrary and capricious.

In order to maintain a section 1983 cause of action, a plaintiff must show two essential elements: first, that the defendants have deprived him of a right secured by the Constitution; and second, that this deprivation has occurred while the defendants were acting under color of state law. *Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982); *Menchaca v. Chrysler Credit*

*Corp.,* 613 F.2d 507, 510 (5th Cir.1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). As we have previously found the defendants' actions were not arbitrary or capricious, Mr. Alanis was not deprived of a right under the Constitution. Therefore, we find summary judgment was appropriate.

Qualified Immunity

Notwithstanding our finding above, the defendants would also have available to them the doctrine of qualified immunity. To protect officials from groundless section 1983 lawsuits, the federal courts have recognized what is known as qualified good faith immunity. *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 587 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The general rule is that government employees "have a common-law immunity from personal liability while performing discretionary duties in good faith within the scope of their authority." *Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied); *Bagg,* 726 S.W.2d at 586. This immunity is based on the public policy that encourages public employees to perform their duties without fear of personal liability for negligent or improper performance. *Id.* Thus, if the appellees were performing discretionary duties in good faith, they will not be liable for torts committed while performing these duties. *See Lazaro v. University of Texas,* 830 S.W.2d 330, 332 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

▮▮▮ Discretionary duties involve acts requiring personal deliberation, decision, and judgment on the part of the employee. *Baker v. Story,* 621 S.W.2d 639, 645 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). A state employee who "is required to pass on facts and determine his actions by the facts found" is performing duties that are "quasi-judicial" in nature and are discretionary. *Torres v. Owens,* 380 S.W.2d 30, 33–34 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). When state employees are acting within the scope of their authority, performing discretionary duties in good faith, they are entitled to the defense of qualified immunity. *See Lazaro,* 830 S.W.2d at 332–33.

In order to overcome this defense, Mr. Alanis must show that the appellees' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Brown v. Texas A & M University,* 804 F.2d 327, 332 (5th Cir.1986). Mr. Alanis argues that since the *Ewing* and *Horowitz* decisions had been determined, his due process rights had been established. However, as noted above, we find there were no violations of Mr. Alanis' due process rights. Thus, we find, as a matter of law, that the actions of the University officials did not violate the clearly established statutory or constitutional rights of Mr. Alanis. Therefore, the actions of all the appellees are protected by the doctrine of qualified immunity.

The appellant's points of error are overruled.

The judgment of the trial court is affirmed.